Dear Mr. Roubique:
This responds to your request for an opinion concerning the distribution of the annual payments received by Louisiana under the Outer Continental Shelf Lands Act Amendments of 1985 (43 U.S.C. § 1331 et seq.)[1]. You advise that the Board of Regents would like to know how the revenues from the 8g amendments should be distributed, and, particularly, "how the revenues from the fifteen annual payments should be distributed".
There has been a great deal of confusion concerning the 8g settlement with Louisiana and the other coastal states (Texas, California, Alabama, Alaska, Mississippi and Florida) of 1986, implemented through passage of the Consolidated Omnibus Budget Reconciliation Act of April 8, 1985. As a consequence of the congressional settlement, Louisiana's federal court suit against the United States was dismissed. The provisions of the congressional amendments are lengthy and detailed, but the essential elements of the settlement are contained in Section 8004, copy attached, and designate specific lump sum settlement amounts for the initial distribution to each of the six (6) states included in the settlement, as follows:
SEC. 8004. DISTRIBUTION OF SECTION 8(g) ACCOUNT.
 * * *
 (b)(1) As a fair and equitable disposition of all revenues (including interest thereon) derived form any lease of Federal lands wholly or partially within 3 miles of the seaward boundary of a coastal State prior to October 1, 1985, the Secretary shall distribute:
 (A) from the funds which were deposited in the separate account in the Treasury of the United States under section 8(g)(4) of the Outer Continental Shelf Lands Act (43 U.S.C. § 1337(g)(4)) which was in effect prior to the date of enactment of section 8003 of this title the following sums:
($ million)
Louisiana . . . . . . . . . . . 572
Texas . . . . . . . . . . . . . 382
California . . . . . . . . . . . 338
Alabama . . . . . . . . . . . . . 66
Alaska . . . . . . . . . . . . . 51
Mississippi . . . . . . . . . . . 14
Florida . . . . . . . . . . . . . 0.03
* * *
The $572 million constitutes one (1) element of funding forming a part of the congressional settlement. These funds were paid to Louisiana on October 1, 1986 and are subject to the provisions of Article VII, § 10.1 of the Louisiana Constitution of 1974.[2]
As part of the congressional settlement, Louisiana and the other included coastal states were allocated additional settlement funds payable over a fifteen (15) year period, as follows:
 (B) from revenues derived from any lease of Federal lands under the Outer Continental Shelf Lands Act, as amended, prior to April 15 of each of the fifteen fiscal years following the fiscal year in which this title is enacted, 3 percent of the following sums in each of the five fiscal years following the date of enactment of this Act, 7 percent of such sums in each of the next five fiscal years, and 10 percent of such sums in each of he following five fiscal years:
($ million)
Louisiana . . . . . . . . . . . . 84
Texas . . . . . . . . . . . . . 134
California . . . . . . . . . . . 289
Alabama . . . . . . . . . . . . . 7
Alaska . . . . . . . . . . . . . 134
Mississippi . . . . . . . . . . . 2.
Thus, Louisiana continues to receive annual payments over a fifteen (15) year period as part of the congressionally mandated structured settlement, payable three (3%) percent for the first five (5) years; seven (7%) percent for the next five (5) years; and ten (10%) percent for the remaining five (5) years. While Section 8004(B) states that these payments are "from revenues derived from any lease of federal lands under the Outer Continental Shelf Lands Act, as amended, * * * ", this section falls under Section 8004(b)(1), which specifies that only revenues from 8g leases are subject to distribution as part of the settlement.
From this review of the federal legislation, it may be concluded that these funds comprise two main elements of funding from the 8(g) settlement, to wit:
 1) $572 million from funds derived from the 8g area and deposited into the separate account in the Treasury of the United States and paid over to Louisiana on October 1, 1986 [Element (1)]; and
 2) $84 million payable to Louisiana annually over a fifteen (15) year period (3% for the first 5 years; 7% for the next 5 years; and 10% for the remaining 5 years), derived from revenues from any lease under the Outer Continental Shelf Lands Act as amended, but from the 8g area, as specified by Section 8004(1) [Element (2)].
Consequently, these two elements of funding derive from 8g revenues and represent the corpus or principal amount of $656 million due Louisiana in the settlement, together with interest earnings for Element (1).
In addition to this category of funding, Louisiana and the other coastal states are entitled to 27% of those revenues, consisting of bonuses, rents and royalties, with accrued interest thereon, excluding federal income and windfall profits taxes, from any lease issued after September 18, 1978 of any federal tract which lies wholly or partially within the 8g area (Section 8003, revising Section 8g). These revenues depend upon the results of federal leasing efforts and production and will vary from year to year according to the leasing experience.
Article VII, § 10.1 of the Louisiana Constitution of 1974 provides that there shall be a special permanent trust fund established in the State Treasury to be known as the Louisiana Education Quality Trust Fund, referred to as the "Permanent Trust Fund", and the Treasurer is required to deposit and credit to the Fund all money which is received after the first hundred million dollars from the federal government under § 1337(g) of Title 43 of the United States Code which is attributable to mineral production activity or leasing activity on the Outer Continental Shelf which has been held in escrow pending asettlement between the United States and the State ofLouisiana; . . ."
As can be seen from the specific language of the federal legislation, all of the funds available for distribution derive from federal leases within the 8g area (Sec. 8004(b)(1)). As discussed, revenues from Element 1 consist of $572 million for Louisiana which was deposited in the separate Treasury account; Element 2 consists of the fifteen (15) year structured payment "from any lease of federal lands under the Outer Continental Shelf Lands Act", whether or not escrowed in the separate account in the Treasury of the United States (Sec. 8004(b)(1)(B)).
It is our opinion that the provisions of Article VII, § 10.1
of the Louisiana Constitution of 1974 require that money "which has been held in escrow pending a settlement between the United States and the State of Louisiana", together with "twenty-five percent of the recurring revenues received under Section 1337(g)"; * * * "twenty-five percent of the interest income earned on investment of monies in the Permanent Trust Fund; seventy-five percent of the realized capital gains on investment of the Permanent Trust Fund, unless such percentage is changed by law enacted by two-thirds of the elected members of each house of the legislature; and twenty-five percent of the dividend income earned on investment of the Permanent Trust Fund" be deposited to the Permanent Trust Fund.
Funds comprising a part of the fifteen (15) year structured payment schedule may be paid to Louisiana from any lease of federal lands, as quoted above, and do not necessarily involve the separate account in the Treasury of the United States or "escrow" referred to in Article VII, § 10.1.
We have determined that the funds comprising Element (2) have been kept in a separate account from those held in escrow by the United States during the litigation and disbursed to Louisiana on October 1, 1986. Thus, the Element (2) funds fall into the category of "recurring revenues received under § 1337(g) of Title 43 of the United States Code which are attributable to mineral production activity or leasing activity on the Outer Continental Shelf", of which twenty-five (25%) percent are required to be deposited in and credited to the Permanent Trust Fund. Therefore, seventy-five (75%) percent of these recurring revenues "shall be deposited and credited to a special fund which is hereby created in the state treasury and which shall be known as the
Louisiana Quality Education Support Fund" or "Support Fund", pursuant to Article VII, § 10.1(A)(2).
We hope this opinion is of assistance to you and if we may be of further help, please call upon us.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: _______________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK:bb
DATE REC'D: 06/22/95
DATE RELEASED:
GARY L. KEYSER ASST. ATTORNEY GENERAL
[1] The Amendments were contained in the Consolidated Omnibus Budget Reconciliation Act of 1985, Public Law No. 99-272, signed into law by President Reagan on April 7, 1986. Title VIII of the legislation amended section 1337(g)(4). Section 1337(g) came to be known as "8g". Full text of amendments printed on pgs. S 3819 and S 3820, Congressional Record, April 8, 1986, copy attached.
[2] The $572 million set forth in subsection 8004(b)(1)(A) was to have accrued interest from April 15, 1996 to October 1, 1986, the date of distribution to Louisiana pursuant to subsection 8004(c). The actual amount paid to Louisiana was $640,699,503.77.